[No. 31130. Department Two. January 9, 1950.]

CHARLES GROVES, *Appellant*, v. HENRY L. MEYERS, *Respondent.*[1]

[1]Reported in 213 P. (2d) 483.

*Welts & Welts,* for appellant.

*Alfred McBee,* for respondent.

HAMLEY, J.—Plaintiff suffered personal injuries when the car which he was driving crashed into the rear of a highway maintenance truck operated by defendant. The accident occurred in the darkness and fog of an early Jan-

uary morning as the truck was preceding plaintiff's car southward on U. S. Highway 99. The point of impact was on the south slope of a concrete highway overcrossing two miles north of Burlington, Washington. At this time and place, the truck was stopped, or proceeding very slowly, on its right-hand side of the highway, while sanding operations were in progress.

The truck bore two normal red tail lights mounted in the usual place at the rear, and one small light on each side of the truckbed. The testimony is in conflict as to whether these lights were burning at the time of the accident. The truck was also equipped with lights mounted upon the top of the cab. They were twice the size of a normal tail light, were more powerful, and were of the flashing type which would show red to the rear. These lights were not in use at the time of the accident.

Plaintiff offered evidence that, when such work was being done in darkness and fog, it was customary for a highway maintenance truck to use such flashing lights. This evidence was rejected. With regard to these lights, the court instructed the jury as follows:

"You are further instructed that you may not base a finding of negligence of the defendant upon the grounds that the defendant did not have the red flashing light on his truck operating because under the laws of this state in force at the time and place of the accident the use of a red flashing light of the kind placed on the defendant's truck was prohibited by law, and unlawful."

Upon a verdict for defendant, judgment was entered accordingly, and a motion for a new trial was denied. Plaintiff has appealed and assigns as error: (1) the rejection of evidence as to the custom in using red flashing lights; and (2) the giving of the above-quoted instruction. Both assignments involve the single question of whether the jury was properly precluded from finding that respondent's duty of exercising reasonable care required that he use the red flashing lights at the time and place of this accident.

If the use of such lights was prohibited by law, as held by the trial court, it is clear that respondent had no duty

to use them. This calls for the construction and application of two statutes. The first of these is Rem. Supp. 1947, § 6360-29 (Laws of 1947, chapter 267, § 6, p. 1142), reading as follows:

"No person shall drive or move any vehicle or equipment upon any public highway with any lamp or device thereon displaying a red light visible from directly in front thereof. This section shall not apply to authorized emergency vehicles or vehicles of the department of highways of the State of Washington which present a danger by the nature of their necessary operation.

"Flashing lights are prohibited on motor vehicles, except on an authorized emergency vehicle or school bus or on any vehicle as a means for indicating a right or left turn."

The prohibition against flashing lights is contained in the second paragraph of this section. That paragraph expressly exempts from that prohibition authorized emergency vehicles and school buses. It does not expressly exempt vehicles of the department of highways. However, appellant points out that the first paragraph of the section, pertaining to red lights visible from the front, states that "this section" shall not apply to authorized emergency vehicles or *vehicles of the department of highways* which present a danger by the nature of their necessary operation. Appellant argues that the words "this section" make the exemption clause attached to the first paragraph also applicable to the second paragraph of the section.

■ The word "section" is ordinarily used to denote a separately numbered part of a statute, including all subdivisions or paragraphs comprising such part. However, it is not necessarily used in this sense in all cases. The word has been construed to mean a provision, clause, sentence, subdivision, subsection, or an entire act. 56 C. J. 1273, § 2. In *Cascade Tel. Co. v. State Tax Commission,* 176 Wash. 616, 619, 30 P. (2d) 976, we said that the words "section or sections," as used in the constitution in referring to the veto power of the governor (Art. III, § 12), "are not always to be limited by the artificial construction of the legislative measure." See, also, *State v. Scales,* 172 N. C. 915, 90 S. E.

439; *Merchants Supply Co. v. Iowa Employment Security Comm.,* 235 Iowa 372, 16 N. W. (2d) 572; *State v. Babcock,* 23 Neb. 128, 36 N. W. 348; *State ex rel. Attorney General v. Pea River Power Co.,* 207 Ala. 6, 91 So. 920; *Spring v. Collector of Olney,* 78 Ill. 101, reversed in part on other grounds in *People ex rel. Miller v. Cooper,* 83 Ill. 585. In all of the last-cited cases, it was held that the word "section" was used in the particular statute under consideration to denote a separable clause, sentence, or provision, as distinguished from an entire numerical section.

If the word "section," as here used to introduce the exception to the first paragraph, is held to make that exception applicable to both paragraphs of § 6360-29, it will render superfluous and meaningless a part of the exception attached to the second paragraph, and will also result in some conflict between the two exceptions. If the first exception applies to the provision relative to flashing lights, then there has been an unnecessary duplication of the words "authorized emergency vehicles" in the second exception. Moreover, since the first exception applies only in cases "which present a danger by the nature of their necessary operation," while the second exception contains no such limitation, confusion and conflict would result from an attempt to apply both exceptions to the second paragraph.

These results can be avoided if the word "section" is here held to refer only to the paragraph of which it is a part. We believe that the statute should be so interpreted. This would give effect to the rule that a statute should, if possible, be so construed that no clause, sentence or word shall be superfluous, void, or insignificant. *State ex rel. Baisden v. Preston,* 151 Wash. 175, 275 Pac. 81; *Martin v. Department of Social Security,* 12 Wn. (2d) 329, 121 P. (2d) 394.

Such a construction is possible here, for while words are usually to be given their ordinary meaning, the literal meaning need not be followed where it is clear that they were intended to be used in a different sense. *Featherstone v. Dessert,* 173 Wash. 264, 22 P. (2d) 1050. Even in the

absence of other considerations, the fact that the exception relating to vehicles of the department of highways *precedes* the second paragraph, is some indication that it was not intended to apply to that paragraph. See *Bayha v. Public Utility Dist. No. 1*, 2 Wn. (2d) 85, 97 P. (2d) 614.

The view that this first exception was not intended to apply to the second paragraph is confirmed by the legislative history of the statute. The first paragraph, relating to red lights visible from the front, was first enacted in 1927. Rem. Rev. Stat., § 6362-33 (Laws of 1927, chapter 309, § 33, p. 799). At that time the exception was confined to vehicles of the police or fire departments. The paragraph remained in this form until 1937, when the Washington motor vehicle act was passed. The paragraph was then re-enacted, with minor changes, and the exception attached thereto was changed to its present form. There was then added, for the first time, the second paragraph relating to flashing lights. Rem. Rev. Stat., Vol. 7A, § 6360-29 [P.P.C. § 291-31] (Laws of 1937, chapter 189, § 29, p. 858). As originally enacted, this second paragraph contained no exception as to any particular type of vehicle. In 1947 both paragraphs were again re-enacted. Rem. Supp. 1947, § 6360-29 (Laws of 1947, chapter 267, § 6, p. 1142). No change was made in the first paragraph or its exception clause. The second paragraph was reworded and the present exception clause added.

There is nothing to indicate that, when the legislature added the second paragraph, it intended to expand, beyond its original scope, the meaning of the words "this section," introducing the exception to the first paragraph.

Words used in an amendment which appear in the original act are presumed to be used in the same sense in the amendment as in the original act. *Merchants Supply Co. v. Iowa Employment Security Comm.*, *supra*; 59 C. J. 1095, Statutes, § 645. It is evident from the legislative history referred to above that the first exception originated as, and has always remained, a limitation upon the first paragraph.

It is our conclusion that § 6360-29, prohibiting flash-

ing lights on motor vehicles, contains no exception applicable to the state highway truck operated by respondent.

We now turn to the second statutory provision relied upon by appellant. This is Rem. Supp. 1947, § 6360-5 (Laws of 1947, chapter 200, § 1, p. 845), the pertinent portion of which reads as follows:

"The provisions of this act shall be applicable to the operation of any and all vehicles upon the public highways of this state except that they shall not apply in the following cases:

"(a) To any authorized emergency vehicle . . .

"(b) To any persons, teams, vehicles or other equipment while actually engaged in authorized work upon the surface of a public highway in so far as suspension of the provisions of this act are reasonably necessary for the carrying on of such work . . . *And providing,* Reasonable precautions are taken to apprise and protect the users of such public highways, but such provisions shall apply to such persons, teams, vehicles and other equipment when traveling to and from such work."

Appellant contends that, under this statute, it is for the jury to determine whether, in a given case, the requirements of the highway code are suspended while authorized road surface work is being done and whether or not the ones doing such work have met the duty of using reasonable care in giving proper warning to the public highway users.

In making this contention, appellant is not necessarily saying that § 6360-5 *creates* a duty to ignore or violate other provisions of the statute in order to protect the public. What he is urging, in effect, is that the section empowers a suspension of other provisions of the statute where necessary in order for the truck operator to comply with his *common-law* duty of care.

It is clear that mere compliance with all statutory requirements, such as those relating to tail lights, does not of itself absolve a motorist from negligence. *Graham v. Roderick,* 32 Wn. (2d) 427, 202 P. (2d) 253; Prosser on Torts, p. 275. The jury was so instructed. Our question, then, really comes down to this: Did the suspension provision of § 6360-5 give the truck driver the right to turn on the

flashing lights as a precaution for the protection of the public? If so, the jury should have been permitted to determine whether, under the circumstances here existing, respondent's common-law duty to exercise reasonable care required that the red flashing lights be used in addition to the tail lights required by statute.

■ It is our view that this question must be answered in the negative. The suspension provision did not give the truck driver that right. This provision was designed neither to create a duty of care with respect to the public, nor to empower a suspension of other statutory provisions so that the driver could better comply with his common-law duty of care. The section is obviously intended only to excuse what would otherwise be violations of the act, in cases where compliance is unavoidable or impractical if the highway maintenance work is to be performed. For example, it is necessary, under certain conditions, for a maintenance vehicle to proceed along the left-hand side of the highway. In such a case, the statutory prohibition against driving on the left-hand side is suspended, and the operator of the vehicle avoids the risk of arrest or civil liability, "providing reasonable precautions are taken to apprise and protect the users of such public highways."

If the legislature had intended to confer authority upon such truck operators to ignore specific provisions of the statute where they deem it necessary for the protection of the public, we would expect to find clear. and positive language to that effect in the statute. No such language is to be found in § 6360-5. Quite to the contrary, the words of the section definitely negative any such interpretation. It is provided that the other provisions of the act are to be suspended only in so far as such suspension is "reasonably necessary for the carrying on of such work." This plainly relates and confines the suspension provision to the needs of the truck operator.

The proviso that the other provisions of the act are not to be suspended unless "reasonable precautions are taken to apprise and protect the users of such public highways,"

is also highly significant. It shows that the public was not the beneficiary of the suspension provisions, but was to be protected in the event other provisions of the act were suspended for the benefit of the truck operator.

The concluding words of the section, making the suspension provisions inapplicable while such truck operators are traveling to and from work, also negative appellant's theory. If the suspension provisions were meant to create a duty with respect to the public, or to authorize disregard of the statute in order to protect the public, why should that duty or authority not exist while maintenance vehicles are traveling to and from work? It is plain that the legislature viewed this suspension provision as tending to jeopardize rather than safeguard the public. Accordingly, it circumscribed the exercise of the suspension provision with restrictions and limitations designed to minimize the danger as much as possible consistent with the practical needs of such maintenance truck operators.

 It seems to us that any statutory provision which confers upon anyone a power to disregard positive statutory mandates ought to be strictly construed. This is particularly true where, as here, the statutory mandates subject to suspension are primarily designed for the protection of the public. In this particular case, it might actually have been a protection to the public, including appellant, if respondent had ignored the statutory prohibition against flashing lights. But, if the driver of a state maintenance truck has the power, under § 6360-5, to disregard the statutory prohibition against flashing lights, he also has power to disregard other statutory provisions relating to the use of motor vehicles on the highways, whenever he believes it would make for safer driving—provisions relating to speed, use of headlights, hand signals, proximity to other vehicles, and the rules of the road in general.

This would be a heavy responsibility to place upon any vehicle operator. This is especially true if we were to hold, as here urged, that failure to discharge that responsibility gives rise to personal liability. Moreover, in the discharge of

that responsibility, public safety on the highways might in many cases be endangered rather than promoted. It is not at all certain that a maintenance truck operator's judgment that positive statutory provisions ought to be suspended in the interests of the public will always prove to be sound.

We conclude that, under the circumstances of this case, the exception provision of § 6360-29 and the suspension provision of § 6360-5 are inapplicable, and that the use of red flashing lights on the maintenance vehicle operated by respondent would have been unlawful. Accordingly, the instruction was proper, and the evidence regarding the customary use of such flashing lights was correctly excluded.

The judgment is affirmed.

ROBINSON, MALLERY, and HILL, JJ., concur.

SIMPSON, C. J., concurs in the result.

