**Christine M. CASPERSON, Appellant,**

v.

**ALASKA TEACHERS' RETIREMENT BOARD, Appellee.**

**No. 6198.**

Supreme Court of Alaska.

May 20, 1983.

Shirley F. Kohls, Steve U'Ren, Juneau, for appellant.

Thomas M. Jahnke, Asst. Atty. Gen., and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, CONNOR, MATTHEWS, COMPTON and DIMOND, JJ.*

OPINION

CONNOR, Justice.

This case concerns the interpretation of certain Alaska statutes which govern the

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11 of the Constitution of Alaska.

retirement system of school teachers. The ultimate question in this case is whether Casperson had five or more "membership years" so as to qualify her for involuntary retirement.

Appellant suffers from multiple sclerosis. On advice of her physician, she terminated employment with the Alaska Department of Education on June 30, 1978. At that time appellant had taught in Alaska as a classroom teacher in the school years of 1963–64, 1973–74, 1974–75, and as a correspondence study teacher in 1975–76, 1976–77 and 1977–78. In these last three years her contract called for four hour days, five days a week, 12 months a year. At times she worked for more than the hours called for in the contract and was paid overtime for those hours.

The Division of Retirement and Benefits ["Division"] determined that appellant's "membership years" amounted to 4.6 instead of 6.0. The Division reasoned that appellant was only entitled to half credit for the last three years she worked. That decision was appealed to the Alaska Teachers' Retirement Board ["Board"], and was affirmed. The superior court affirmed that decision, and this appeal was taken.

 Appellant has raised six issues on appeal, but we find one issue to be dispositive: did the Board err when it interpreted the term "membership years" in AS 14.25.-130(a) as being the equivalent of "years of service" as defined in AS 14.25.220(16)?[1]

The statutes which pertain to this case should be read as a whole in order to comprehend the overall nature of the teachers' retirement system. See AS 14.25.050(a) (am. § 1 ch. 138 SLA 1970); AS 14.25.110(a) (am. §§ 1–3 ch. 17–3 SLA 1975); AS 14.25.-115(a) (am. § 13 ch. 136 SLA 1978); AS 14.25.120(c) (am. §§ 4–6, 14 ch. 173 SLA 1975); AS 14.25.130 (am. § 7 ch. 173 SLA 1975); AS 14.25.135(a) (am. § 8 ch. 173 SLA 1975); AS 14.25.137(a) (am. § 9 ch. 173 SLA (1975); AS 14.25.140 (am. § 10 ch. 173 SLA 1975); AS 14.25.220 (am. §§ 12, 13 ch. 173 SLA 1975). In the body of this opinion it will only be necessary to quote certain key provisions of these statutes.

Appellant contends that AS 14.25.130 uses five "membership years" as the test of eligibility for involuntary retirement. This is correct, as the statute, at the relevant time, stated:

"*Eligibility for disability retirement.* (a) A teacher in membership service who has become permanently disabled, as defined in § 220 of this chapter, before age 55 and who has had five or more membership years may be retired by the administrator as of the first day of the month following the permanent disability."

It appears that "membership year" is not defined elsewhere in the relevant statutes, although AS 14.25.220(5), at the relevant time, defined "membership service" as follows:

" '[M]embership service' means service as a teacher in a public school within the Territory or State of Alaska, or both, under the supervision and control of the Territorial Board of Education or the Department of Education, the school board of any city or borough school district, or the Board of Regents of the University of Alaska, or any period during which the teacher is on an approved sabbatical leave granted in accordance with AS 14.20.310 or is receiving a disability retirement salary."

---

1. The other issues, briefly stated, are:
 (a) Did the Board err in concluding that appellant was a part-time, and not a full-time, teacher?
 (b) Did the Board misapply AS 14.25.220(16) to appellant, who taught shorter days but more months than a normal classroom teacher?
 (c) Did the Board err in concluding that appellant could not get service credit for over-time hours that she worked, beyond her contract time?
 (d) Did the Board err in concluding that appellant could not get service credit for the time she was on maternity leave and sick leave?
 (e) Did the superior court err in affirming the decision of the Board?

However, the Division interpreted "membership year" as meaning "year of service" as defined by AS 14.25.220(16). The pertinent provision of this latter statute, the last clause thereof, states:

"... [I]f service is performed on a part-time basis, one-half credit shall be given for each day of service."

As appellant points out, the Division's interpretation means that appellant is credited with 4.6 "membership years" instead of 6. She argues that "membership year" simply means (a) membership, and (b) teaching in Alaska's public schools for a school year. She supports this argument by asserting that if the legislature had intended "year of service" to be equated with "membership year," it would have chosen different language from that which it used.

Under a literal reading of the statutes, the eligibility for voluntary retirement is determined by "years of membership service." AS 14.25.110. But for involuntary retirement the term "years of membership service" is not used, and the statutes mention only "membership years."

Next, appellant points out that benefits are calculated differently under the schemes for voluntary and involuntary retirement. For voluntary retirement the amount is computed at 2% of the average base salary, multiplied by total years of service. AS 14.25.120(c)(1). But for involuntary retirement the benefits are simply 50% of the teacher's base salary immediately before disability. AS 14.25.140(c). And base salary is defined as any remuneration for services rendered during any school year. AS 14.25.220(2). Thus, argues appellant, the legislature had quite different things in mind when it acted in regard to involuntary and voluntary retirement.

Lastly, appellant resorts to case law of other jurisdictions. Those cases are distinguishable in various respects and do not require extended discussion.[2]

In response to appellant's arguments, the state concedes that "membership years" is not elsewhere defined, but argues that a textual analysis of the statutes militates in favor of equating "membership year" with "year of service." However, we are unpersuaded by the state's argument. It must be assumed that the legislature consciously used different terms for a reason, and that those terms have different referents. Otherwise, the legislature simply would have used one term, e.g., "membership year" throughout these statutes.

The state next argues that the history of teachers' retirement legislation in Alaska supports the interpretation which it seeks. From the establishment of the teachers' retirement system in 1945 until 1970, all retirement, whether voluntary or involuntary, was based upon "years of service" and required employment on a full-time basis.[3] In 1970, the legislature amended the statutes so that part-time teachers could qualify for retirement benefits. Ch. 138, § 16, SLA 1970. However, by leaving AS 14.25.-130 unchanged, the test for eligibility for disability retirement remained the same. That is, a teacher who had "five or more membership years," could be retired for disability.

We are unpersuaded that the legislative history of these statutes supports the state's argument. As we have said above, we must assume that the legislature was conscious of what it was doing when it amended the statute in 1970, but left AS 14.25.130 unchanged.

We hold that appellant has more than five membership years, and that she is entitled to disability retirement. Therefore, we must reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

BURKE, C.J., not participating.

2. The cases are *State ex rel. Murphy v. Board of Trustees,* 168 Wis. 238, 169 N.W. 562 (Wis. 1918); *Moore v. Board of Trustees,* 170 Wash. 175, 16 P.2d 195 (Wash.1932); and *Charters v. Board of Trustees,* 192 Wash. 261, 73 P.2d 508 (Wash.1937).

3. In 1955 a provision for disability retirement was enacted for teachers who had five or more "membership years," but because only full-time teachers were covered the distinction between that term and "year of service" was not important. *See* Ch. 145, §§ 2(c), 14, SLA 1955.

COMPTON, Justice, joined by RABINOWITZ, Justice, dissenting.

I dissent from the court's holding that Appellant Casperson had five or more "membership years." Casperson is eligible for disability retirement under AS 14.25.-130(a) only if she has taught for five "membership years."[1] "Membership year" is not defined, nor is the term used elsewhere in the statutory scheme. The *quality* of "membership years" is clear: "membership" means "membership service," which is defined as service as a teacher in Alaska[2] (as opposed to "creditable service"—service as a teacher "outside" or in the Bureau of Indian Affairs. AS 14.25.220(3)). What is at issue is the *duration* of "membership years": does it mean teaching during a school year, as Casperson contends, or teaching the equivalent of a "year of service,"[3] as the state contends? If the former, Casperson has taught for six years; if the latter, she has only taught for 4.6 years because her last three years were part-time, and therefore only "one-half credit [was] given for each day of service." AS 14.25.-220(16).

## I. STANDARD OF REVIEW

The issue before the court is thus the correct interpretation of the phrase "membership years" in AS 14.25.130(a). The "substitution of judgment" test is the appropriate standard for interpreting regulations. *Wien Air Alaska v. Arant,* 592 P.2d 352, 356 (Alaska 1979); *Jager v. State,* 537 P.2d 1100, 1107 n. 23 (Alaska 1975). Nevertheless, if a statute is ambiguous, the court may give some weight to the administrative decision. *Union Oil Co. v. Department of Revenue,* 560 P.2d 21, 25 (Alaska 1977). Furthermore, practices of administrative agencies that "reflect the understanding they have of provisions they are charged to carry out, have *great weight* in determining the operation of a statute," 2 A. Sutherland, Statutory Construction § 49.03 (Sands ed. 1973) (emphasis added), especially "[l]ong-continued contemporaneous and practical interpretation" of that statute. *Id.,* § 49.-03. *See also* 1 K. Davis, Administrative Law Treatise § 5.06, at 324 (1958) ("Courts give extra authoritative weight to interpretative rules and practices which ... have been consistently followed over a long period.").

In its findings of fact, the Teachers' Retirement Board stated: "The Division [of Retirement and Benefits] has, for many years, consistently applied the definition of "years of service" in determining whether an applicant for disability benefits has the required five 'membership years'; the Division has required proof that the applicant has five years of service and that the service was 'membership service.'" I believe that some weight, "great" or otherwise, should be given to the Division's consistent

---

1. AS 14.25.130 provided at the relevant time in part: "*Eligibility for disability retirement.* (a) A teacher in membership service who has become permanently disabled ... before age 55 and who has had five or more membership years may be retired ....:

2. AS 14.24.220(5) provided:
 "[M]embership service" means service as a teacher in a public school within the Territory or State of Alaska, or both, under the supervision and control of the Territorial Board of Education or the district, or the Board of Regents of the University of Alaska, or any period during which the teacher is on an approved sabbatical leave granted in accordance with AS 14.20.310 or is receiving a disability retirement salary.

3. AS 14.25.220(16) provided:
 "[Y]ear of service" means membership service during the dates set for a school year under AS 14.03.030; *fractional credit shall be given for membership service* after July 1, 1967, during any school year *as follows:* (A) less than nine days, no credit; (B) nine days or more but less than 27 days, 0.1 years; (C) 27 days or more but less than 45 days, 0.2 years; (D) 45 days or more but less than 63 days, 0.3 years; (E) 63 days or more but less than 81 days, 0.4 years; (F) 81 days or more but less than 100 days, 0.5 years; (G) 100 days or more but less than 118 days, 0.6 years; (H) 118 days or more but less than 136 days, 0.7 years; (I) 136 days or more but less than 154 days, 0.8 years; (J) 154 days or more but less than 172 days, 0.9 years; (K) 172 days or more, 1.0 years; *if service is performed on a part-time basis, one-half credit shall be given for each day of service.* [Emphasis added].

interpretation over many years. It is clear that the court gives no weight to the Division's interpretation because it casually reverses the Division's determination, even though the arguments on statutory construction that Casperson makes are, as shown below, unpersuasive.

## II. STATUTORY CONSTRUCTION

Both Casperson and the state look to the other eligibility statutes to support their opposing interpretations. To determine eligibility for what Casperson terms "voluntary retirement" (normal, deferred, and deferred vested) the statutes use the term "years of membership service."[4] Casperson contends that because "years of membership service" is not used in the three *involuntary* retirement provisions regarding eligibility, disability retirement,[5] death benefits,[6] and survivor's allowance,[7] the legislature did not intend the "year of service" partial credit calculation to apply to any of the involuntary provisions. This voluntary/involuntary distinction does not help to determine what "membership years" means. The other "involuntary" provisions, death benefits and survivor's allowance, do not qualify the term "years"; only the disability retirement provision at issue qualifies "years" with "membership." In my view, the addition of "membership" brings it closer to the "voluntary" benefit provisions that discuss "years of membership service."

Casperson also points out that the *benefits* are calculated differently under the schemes for voluntary and involuntary retirement. For voluntary retirement the amount is computed at two percent of the average base salary, multiplied by total years of service. AS 14.25.120(c)(1). For disability retirement, the benefits are simply fifty percent of the base salary immediately before disability. AS 14.25.140. From this Casperson concludes that "years of service plays an important role in determining benefits under all types of voluntary retirement but it plays no part in involuntary retirement and it was, therefore, incorrect to apply that term [years of service] to a disability retirement inquiry." The court appears to accept this reasoning.

The difference in *calculating* normal retirement benefits and disability benefits should have no bearing whatsoever on the *eligibility* criteria. To the contrary, Casperson has merely pointed out that benefits are calculated differently for each type of provision. This observation does not help explain why the legislature used the term "membership years" only when referring to disability retirement eligibility.

The state essentially uses the same facts to lead to the opposite conclusion: since all

---

4. AS 14.25.110 provided in part: *"Eligibility for service retirement.* (a) A teacher is eligible for normal retirement if he has completed either ... eight years of membership service ... or ...."

 AS 14.25.135 provided in part: *"Deferred retirement benefit.* (a) A teacher is eligible for a deferred benefit if ... he has completed at least 15 years of creditable service, the last five years of which have been in membership service; and ...."

 AS 14.25.137 provided in part: *"Deferred vested retirement benefit.* (a) A teacher is eligible for a deferred vested benefit if
 (1) he terminates his employment after completing eight years of membership service; and ...."

5. See *supra* note 1.

6. AS 14.25.160 provided in part:
 *Payment upon death of a teacher.* (a) Upon receipt of a valid claim and proper proof of the death of a member who has not ever

made a supplemental contribution or whose supplemental contributions were for less than one year and who is entitled to a refund of contributions, a payment, in the amount specified in this section shall be paid to a person he has nominated by written designation executed and filed with the administrator ....

 (b) If a teacher is in membership service at the time of death and has not received any retirement salary, the amount of the payment is the sum of (1) his accumulated contributions ... and (2) $1,000, plus $100 multiplied by the number of completed school years of membership service.

7. AS 14.25.162 provided in part: *"Survivor's allowance.* (a) If a teacher dies while in membership service ... his surviving spouse is entitled to a survivor's allowance if the teacher has made a supplemental contribution for at least one year before his death ...."

the other forms of retirement base eligibility on "*some discrete quantum of service,*" (emphasis in original) "membership years" must mean "years of membership service." The state rejects Casperson's argument that "years" means "school years" because the latter term is primarily used "to denote an accounting or administrative period or frame of reference similar to the fiscal year." The state argument is essentially a syllogism: (1) "member" means having a position requiring a year of service;[8] (2) "year of service" means "membership service during . . .";[9] therefore, (3) "membership years" equals "years of membership service." The state concludes that "the signposts to 'membership service' and 'year of service' are, at the very least, reasonably bright."

### III. LEGISLATIVE HISTORY

The state also turns to legislative history to support the equation of "membership year" to "year of membership service." In 1955, the legislature provided for disability retirement for teachers who had five or more membership years. At the time, only full-time teachers were members of the system; therefore, the state concludes, there was no distinction between "membership years" and "year of membership service" because "*there was only one kind of service: active, full-time teaching.*" (Emphasis in original). In 1970, the legislature amended the definition of "teacher" to include part-time teachers and modified "year of service" to allow fractional credit for part-time service.

The question is whether the 1970 amendments had the effect of suddenly distinguishing "membership years" from "years of membership service," even though they had previously had identical meanings. The state contends not. The court's opinion rejects the state's argument because "[i]t must be assumed that the legislature consciously used different terms for a reason, and that those terms have different referents." 664 P.2d at 585. I disagree. In 1955, there was only one referent possible—five *full-time* years. It is unlikely that the legislature "consciously used different terms" in 1955 because it knew that in 1970 it would include part-time teachers. It is just as likely that the use of different terms in 1955 was a mere oversight and that the legislature assumed in 1970 that the part-time amendments would apply to all durational requirements for eligibility. This interpretation, while not conclusive of legislative intent, is bolstered by the fact that the legislature has not amended the statute in the face of the Division's continued interpretation of "membership years."

### IV. CONCLUSION

Without citing any case law or rules of statutory construction, the opinion reverses the long-standing interpretation by the Division, the affirmance of the Division's finding by the Retirement Board, and the affirmance by the superior court. The sole support for this reversal is that "we must assume that the legislature was conscious of what it was doing when it amended the statute in 1970, but left AS 14.25.130 unchanged." 664 P.2d at 585. I find this "support" to be unconvincing. Given that Casperson and the court have not presented any persuasive reason, other than the tragedy of her circumstances, to accept her interpretation, the weight given to a long-standing interpretation mandates an affirmance. Therefore, I would uphold the Retirement Board's interpretation of the term "membership years" in AS 14.25.130(a) as being the equivalent of "years of service" as defined in AS 14.25.220(16).

---

8. AS 14.25.220(15) defines "member" as "a certified teacher . . . employed on a full-time or part-time basis in a position having duties which normally require a *year of service* . . . ." (Emphasis added.)

9. *See supra* note 3.